## In re William W. Jilz.

### January 25, 1877.

1. So much of the act of March 5, 1869, amendatory of acts establishing a Court of Criminal Correction in St. Louis County, as prescribes a punishment different from that prescribed by the general law is unconstitutional; and where a person is imprisoned by the St. Louis Court of Criminal Correction upon a conviction, under the general law, and is released on *habeas corpus*, by a judge of the Circuit Court, such release is void; and the prisoner may properly be taken in custody under the original commitment.

2. Where the unconstitutional portion of an act may be stricken out, and leave a complete enactment capable of being enforced, the whole will not be declared void because of the unconstitutionality of a part.

APPLICATION for writ of *habeas corpus*.

*Prisoner remanded.*

R. S. McDonald, T. H. Peabody, and C. C. Simmons, for petitioner.

H. B. Wilson, for respondent.

BAKEWELL, J., delivered the opinion of the court.

On January 22, 1877, William W. Jilz filed in this court a petition stating that, on August 12, 1876, he was tried and convicted in the St. Louis Court of Criminal Correction on a charge of criminal abortion, and sentenced by the judge of the court to imprisonment in the jail of St. Louis County for the term of one year, and to pay a fine of $500, and was thereupon committed to jail, and confined therein until

August 22, 1876, on which day, the judge of the Criminal Court being then absent from the county, he applied to the Hon. James Lindley, one of the judges of the Circuit Court of St. Louis County, for a writ of *habeas corpus*, in obedience to which writ petitioner was brought before Judge Lindley, and discharged by him on the ground that the Court of Criminal Correction exceeded its power in sentencing the petitioner to confinement in the county jail for one year, and that the commitment was, therefore, null and void, and the petitioner unlawfully restrained of his liberty.

The petitioner further states that, notwithstanding said discharge, the jailer of St. Louis County, on a reissue of the same commitment, again arrested the petitioner on September 29, 1876, and keeps him illegally confined in the jail. A copy of the commitment is attached to the petition.

The petitioner alleges that his imprisonment is illegal in this, that he is illegally confined under the same commitment and charge from which he was discharged by Judge Lindley as stated above, which discharge, he says, was legal; and in this, that the sentence of the Court of Criminal Correction is illegal and void, because that court, petitioner says, has no power to sentence for a longer term than six months, and has no power to sentence any convicted person to imprisonment in any other place than the city workhouse.

In obedience to the writ of *habeas corpus* issued on this application, the jailer of St. Louis County produced the body of his prisoner, and made a return in which he admits that the petitioner was discharged from the authority of respondent by order of Judge Lindley, and says that the order of discharge was made in vacation of the Circuit Court, and that afterwards, on motion of the attorney representing the State, the Court of Criminal Correction recommitted the petitioner to the custody of respondent on the same conviction for criminal abortion on which he had been before committed; and that respondent holds petitioner under

this last commitment, a copy of which is attached to the return.

The act of March 5, 1869, entitled "An act to amend an act approved March 23, 1868, entitled 'An act to amend an act to establish a Court of Criminal Correction in St. Louis County,' approved March 15, 1866," gives to the Court of Criminal Correction jurisdiction of the offense of which petitioner was convicted, and provides (sec. 32) that, "whenever the punishment of any misdemeanor is partly or wholly by imprisonment in the county jail, the party convicted in said court shall, instead of being sentenced to imprisonment in the county jail, be sentenced to imprisonment in the work-house in the city of St. Louis, or such other place of imprisonment as the county of St. Louis may provide for the purpose, and be there kept at hard labor during the period of imprisonment to which such party may be sentenced; but no sentence shall be for a longer period than six months for any cause; nor shall any person be detained for a greater period by reason of his or her failure to pay any fine or costs that may be imposed by said court."

The Constitution of the State in force at the time this law was passed provided that no one should be "deprived of life, liberty, or property but by the judgment of his peers and the law of the land." Const. 1865, art. 1, sec. 18. And the existing Constitution declares that "no person shall be deprived of life, liberty, or property without due process of law." Art. 2, sec. 30. The clauses are somewhat differently worded, but the meaning is the same. The phrase "the law of the land," and the phrase "due process of law," have been long the subjects of judicial interpretation, and their meaning is fixed. That a freeman shall not be "passed upon, or condemned, but by the lawful judgment of his peers and the law of the land," is the provision of *Magna Charta*, from which similar declarations are introduced into the Bills of Rights which form a part of the organic law of the Federal government and of each State of the Union.

The "law of the land" is interpreted to mean a general public law, operating equally upon every member of the community; and every partial law, by which the rights of individuals are abridged or taken away, is held by the courts to be void, as being in violation of this law of the land.

When the Legislature passes a law, the presumption is always in favor of its power to do so, and the courts cannot disregard the law on a mere doubt. But when the question is presented in such a way that its solution is necessary to the determination of a case properly before them for consideration, where a legislative provision clearly violates the organic law of the State, the courts will not hesitate, in the performance of their duty, to declare such an enactment void. A law which should prescribe death as the punishment of murder in one county, and imprisonment as the penalty for the same crime in other parts of the State, would be void, because not operating equally upon all inhabitants of the State. The general law applicable to the State prescribes, as the punishment for the offense of which the petitioner was convicted, imprisonment in the county jail not exceeding one year, or fine not exceeding $500, or both such fine and imprisonment. Wag. Stat. 450, sec. 34. A law prescribing a different punishment from this in St. Louis County is clearly unconstitutional. It follows that so much of the act referred to, establishing the Court of Criminal Correction, as limits the punishment for this misdemeanor in St. Louis County to imprisonment for six months, is void.

The fact that the punishment in this county involves imprisonment in the work-house instead of in the jail, does not, in any degree, tend to do away with the unconstitutionality of this provision of the law. The place of confinement is a matter of indifference. The law highly regards the liberty of the citizen, and the organic law of the State forbids the Legislature to enact that the *term* of imprisonment for the same offense shall vary in different localities. But the *place* of imprisonment must necessarily vary; and in this way

there may be an accidental variation in the degree of punishment, as the house of confinement may be more or less commodious, or the rules of one jail be more severe upon the prisoner than those of another house of detention. This the law cannot and does not regard; and we confine our ruling to so much of the law as prescribes a different term of imprisonment for the same offense.

But there is nothing in the structure of the act itself which prevents this unconstitutional portion from being stricken out from the law, and leaving a complete enactment capable of being executed in accordance with the apparent intent of the Legislature. Unless the provisions of the law are so connected that it cannot be presumed that the Legislature would have passed the one without the other, the courts cannot declare the whole act void, but must sustain the act, rejecting only its unconstitutional provisions. It follows that the Court of Criminal Correction had jurisdiction to try and sentence the petitioner, and that the sentence it imposed, being that provided for by the general law of the the State for the offense for which he was convicted, was strictly legal and must be carried out.

This being so, the learned judge of the Circuit Court had no jurisdiction to discharge the petitioner from commitment, since it is made the duty of the magistrate to remand a person brought before him on *habeas corpus*, if it shall appear that he was detained in custody by virtue of the final decree of a court of criminal jurisdiction. Wag. Stat. 689, sec. 33.

The discharge was, therefore, void, and the prisoner was properly recommitted, and is now rightly in the custody of respondent, and should be remanded to jail; and it is so ordered. All the judges concur.